**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case No. |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TEENY TURNER, LLC, NISHA M. MOELLER, THE | ) | |
| RESIDENCES AT THE JOFFREY TOWER | ) | |
| CONDOMINIUM ASSOCIATION, and WEST END | ) | |
| FLATS CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT FOR FORECLOSURE AND OTHER RELIEF

NOW COMES Plaintiff The Huntington National Bank, by and through its attorneys, Dickinson Wright PLLC, and for its Verified Complaint for Foreclosure and Other Relief, states as follows:

## THE PARTIES

1.      Plaintiff The Huntington National Bank (the "Bank"), is a national bank organized and existing under the laws of the United States of America with a principal place of business in Columbus, Ohio, and which maintains its main office in Ohio, as set forth in its certificate submitted to the Office of the Comptroller of the Currency of the U.S. Treasury (the "OCC").

2.      Defendant Teeny Turner, LLC ("Borrower"), is an Illinois liability company that was involuntarily dissolved on September 9, 2022, with its principal place of business at 8 East Randolph Street, Suite 2902, Chicago, Illinois, 60601.  Nisha M. Moeller ("Moeller") is the manager and sole member of Borrower and, upon information and belief, maintains her domicile

and principal place of residence at 8 East Randolph Street, Unit 2902, Chicago, Illinois 60601. Therefore, Borrower is a citizen of the State of Illinois.

3.     Moeller is an individual who is a citizen of the State of Illinois because, upon information and belief, she maintains her domicile and principal place of residence at 8 East Randolph Street, Suite 2902, Chicago, Illinois, 60601.

4.     Defendant The Residences at the Joffrey Tower Condominium Association (the "Joffrey Association") is a not-for-profit corporation organized and existing under the laws of Illinois and the condominium association for the building located at 8 East Randolph Street, Unit 2902, Chicago, Illinois, 60601.

5.     Defendant West End Flats Condominium Association (the "West End Association") is a not-for-profit corporation organized and existing under the laws of Illinois and the condominium association for the building located at 3207 West Argyle Street, Unit 2W, Chicago, Illinois, 60625.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper under 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens of different states.

7.     Venue is proper under 28 U.S.C. § 1391(b)(1) and (2) because one or more of the Defendants reside in the Northern District of Illinois, Eastern Division, and the loan and properties subject to this action was entered into, accepted, and situated in the Northern District of Illinois, Eastern Division.

## COMMON ALLEGATIONS

8.     The Bank made a loan (the "Loan") to Borrower in the principal amount of $578,000.00 evidenced by that certain U.S. Small Business Administration Note from Borrower

to the Bank dated November 10, 2021, in the original principal amount of $578,000.00 (the "Note"). A copy of the Note is attached hereto as **Exhibit A**.

9.      On or about November 10, 2021, in connection with the Loan and to guarantee Borrower's repayment obligations, Moeller executed and delivered to the Bank a certain U.S. Small Business Administration Unconditional Guarantee (the "Guaranty"). A copy of the Guaranty is attached hereto as **Exhibit B**.

10.      The Note and Guaranty are secured by, among other things, that certain Mortgage on the property located at 8 East Randolph Street, Unit 2902, Chicago, Illinois, 60601 (the "Randolph Property"), made on November 10, 2021 by Moeller to the Bank and recorded in the Office of the Recorder of Deeds of Cook County, Illinois on November 26, 2021, as Document No. 2133025052 (the "Randolph Mortgage"). A copy of the Randolph Mortgage is attached hereto as **Exhibit C**.

11.      The Note and Guaranty are further secured by, among other things, that certain Mortgage on the property commonly known as 3207 West Argyle Street, Unit 2W, Chicago, Illinois, 60625 (the "Argyle Property") made on November 10, 2021 by Moeller to the Bank and recorded in the Office of the Recorder of Deeds of Cook County, Illinois on November 26, 2021, as Document No. 2133033076 (the "Argyle Mortgage", and together with the Randolph Mortgage are collectively referred to as the "Mortgages"). A copy of the Argyle Mortgage is attached hereto as **Exhibit D**.

12.      The Mortgages are cross-collateralized with any indebtedness of Borrower and Moeller to the Bank, including any amounts due to the Bank from Moeller under the Guaranty.

13.      Borrower is in default under the Note and Mortgages for its failure to make all required payments under the Note commencing on April 5, 2023 and continuing thereafter.

Pursuant to the terms contained therein, the entire principal balance plus accrued interest and late charges has been accelerated and is immediately due and owing.

14.     As of August 28, 2023, there is due and owing under Note:

| | |
|---|---|
| Principal | $554,139.68 |
| Accrued Interest | $ 27,403.34 |
| Title Service Fees | $     200.00 |
| Appraisal Fees | $  3,298.00 |
| Late Charges | $     811.06 |
| Return Check Charge | $      30.00 |
| **Total:** | **$585,882.08** |

15.     From and after August 28, 2023, interest accrues on the unpaid principal balance under the terms of Note at the rate of $159.41 per day.  In addition, the Bank has incurred and will continue to incur attorneys, appraisal, inspection, search, credit report and other fees and expenses as needed until the date of sale, all of which are compensable under the terms of Note, the Mortgages, and the Guaranty.

## COUNT I – FORECLOSURE OF THE RANDOLPH MORTGAGE

16.     The Bank restates and re-alleges paragraphs 1-15, inclusive, as though fully set forth in this paragraph 16.

17.     Information Concerning the Randolph Mortgage:

   a.     **Nature of Instrument:** Mortgage.

   b.     **Date of Mortgage:** November 10, 2021.

   c.     **Name of Mortgagor:**  Nisha M. Moeller.

   d.     **Name of Mortgagee:**  The Huntington National Bank.

   e.     **Date & Place of Recording:** November 26, 2021 in the Office of the Cook County Recorder of Deeds.

   f.     **Identification of Recording:** Document No. 2133025052

g.  **Interest Subject to Mortgage:** Fee simple.

h.  **Amount of Original Indebtedness:** $578,000.00.

i.  **The Legal Description of the Real Estate, Common Address, and P.I.N.:**

(1)  **Legal Description:**

UNIT 2902, TOGETHER WITH THE EXCLUSIVE RIGHT TO USE STORAGE SPACE S148, LIMITED COMMON ELEMENT, IN THE RESIDENCES AT THE JOFFREY TOWER CONDOMINIUM AS DELINEATED ON THE PLAT OF SURVEY OF THAT PART OF THE FOLLOWING PARCELS OF REAL ESTATE:

PARCEL 1:

LOTS 25 TO 31, INCLUSIVE, IN BLOCK 9 IN FORT DEARBORN ADDITION TO CHICAGO IN THE SOUTH WEST 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS. WHICH SURVEY IS ATTACHED AS EXHIBIT C TO THE DECLARATION OF CONDOMINIUM RECORDED JANUARY 23, 2008 AS DOCUMENT NUMBER 0802803105, AS MAY BE AMENDED FROM TIME TO TIME TOGETHER WITH THEIR UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO AND FOR THE BENEFIT OF PARCEL 1 AS CREATED BY THE DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS FOR THE STATE RANDOLPH DEVELOPMENT, RECORDED OCTOBER 19, 2007 AS DOCUMENT NUMBER 0729260064 FOR SUPPORT, INGRESS AND EGRESS, MAINTENANCE, UTILITIES, ENCROACHMENTS, ELEVATORS AND FACILITIES, OVER THE LAND DESCRIBED THEREIN AND AS MORE PARTICULARLY DESCRIBED AND DEFINED THEREIN.

(2)  **Common Address:** 8 East Randolph Street, Unit 2902, Chicago, IL 60601.

(3)  **P.I.N.:** 17-10-305-011-1146.

j.  **Statements as to Defaults including, but not necessarily limited to, date of default, current unpaid principal balance, per diem interest accruing, and any other information concerning the default:**

(1)  A Default/Event of Default has occurred under the Note, Randolph Mortgage and Guaranty as specifically set forth in Paragraphs 13-15 herein. Pursuant to the terms contained therein, the entire principal balance plus accrued interest and late charges is immediately due and owing. As of August 28, 2023, the following amounts were due and payable under the Note, Randolph Mortgage and Guaranty:

| | |
|---|---|
| Principal | $554,139.68 |
| Accrued Interest | $ 27,403.34 |
| Title Service Fees | $ 200.00 |
| Appraisal Fees | $ 3,298.00 |
| Late Charges | $ 811.06 |
| Return Check Charge | $ 30.00 |
| **Total:** | **$585,882.08** |

From and after August 28, 2023, interest accrues on the unpaid principal balance under the terms of the Note at the rate of $159.41 per day. In addition, the Bank has incurred and will continue to incur attorneys, appraisal, inspection, search, credit report and other fees and expenses as needed until the date of sale, all of which are compensable under the terms of the Note, Randolph Mortgage and Guaranty.

(2)  The Bank reserves the right to allege additional defaults which may be discovered or which may occur subsequent to the filing hereof.

k.  **Name of Present Owner of the Randolph Property:** Nisha M. Moeller.

l.  **Names of Other Persons Who Are Joined as Defendants and whose interests in or lien on the mortgaged real estate are sought to be terminated:**

(i)  Teeny Turner, LLC;
(ii)  The Residences at the Joffrey Tower Condominium Association.

m.  **Names of Persons Claimed to Be Liable for Deficiency:**

(i)  Teeny Turner, LLC;
(ii)  Nisha M. Moeller.

n.  **Capacity in Which the Bank Brings This Action:** As the owner and legal holder of the Note, Randolph Mortgage and Guaranty.

o.  **Facts in Support of Shortened Redemption Period, If Sought**: None at this time.

p.  **Statement That the Right of Redemption Has Been Waived By All Owners of Redemption, If Applicable:** Not applicable.

q.  **Facts in Support of Request for Attorneys' Fees and of Costs and Expenses, If Applicable:** Attorneys' fees, costs and expenses are recoverable under the terms of the Note, Randolph Mortgage and Guaranty.

r.  **Facts in Support of a Request for Appointment of Mortgagee in Possession or for Appointment of a Receiver, If Sought**: Upon an event of default, the Randolph Mortgage provides on page 11 that the Bank may seek the appointment of a receiver or be appointed mortgagee-in-possession to, among other things, take possession of the Randolph Property and collect the rents.

s.  **Mortgagee's Position on Consent Foreclosure:** The Bank does not, in accordance with 735 ILCS 5/15-1402, agree to accept title to the Randolph Property in satisfaction of all indebtedness and obligations secured by the Randolph Mortgage without a judicial sale.

t.  **Name of Defendants Whose Right to Possess the Mortgaged Real Estate, After the Confirmation of a Foreclosure Sale, Is Sought To Be Terminated and, If Not Elsewhere Stated, the Facts in Support Thereof**: Teeny Turner, LLC, Nisha M. Moeller and The Residences at the Joffrey Tower Condominium Association.

## <u>REQUEST FOR RELIEF AS TO COUNT I</u>

Wherefore, Plaintiff The Huntington National Bank, respectfully requests that the Court enter the following:

1.  A Judgment of Foreclosure and Sale as follows:

    (A)  that an accounting be taken under the direction the Court of the amounts due and owing by Borrower to the Bank;

    (B)  that Borrower be ordered to pay to the Bank, before expiration of any redemption period (or, if no redemption period, before a short date fixed by the

Court) whatever sums may appear to be due upon the taking of such account, together with attorneys' fees and costs of the proceeds (to the extent provided in the Randolph Mortgage or by law);

(C)     that in default of such payment, in accordance with the judgment, the Randolph Property be sold as directed by the Court, to satisfy the amount due to the Bank as set forth in the judgment, together with the interest thereon at the statutory judgment rate from the date of the judgment;

(D)     that in the event the Bank is the purchaser of the Randolph Property at such sale, the Bank may offset against the purchase price of the Randolph Property the amounts due under the Judgment of Foreclosure and order confirming the Sale;

(E)     that in the event of such sale and the failure of any person entitled thereto to redeem prior to such sale pursuant to Article 15 of the Illinois Mortgage Foreclosure Law, 735 ILCS §§ 5/15-1101 et seq., the Defendants made parties to the foreclosure in accordance with Article 15 of the Illinois Mortgage Foreclosure Law, and all non-record claimants given notice of the foreclosure in accordance with Article 15 of the Illinois Mortgage Foreclosure Law, and all persons claiming by, through or under them, and eachand any and all of them, may be forever barred and foreclosed of any right, title, interest, claim, lien, or right to redeem in and to the mortgaged real estate; and

(F)     that if no redemption is made prior to such sale, a deed may be issued to the purchaser thereat according to law and such purchaser be let into possession of the Randolph Property in accordance with Article 17 of the Illinois Mortgage Foreclosure Law §§ 735 ILCS 5/15-1701 et seq.

2.     An order appointing the Bank as mortgagee in possession or, in the alternative, an order appointing a receiver, if applicable;

3.     A personal judgment of deficiency against Defendants, Teeny Turner, LLC and Nisha M. Moeller;

4.     A judgment for attorneys' fees, costs and expenses; and

5.     Such other and further relief to which the Bank may be entitled.

### COUNT II – FORECLOSURE OF THE ARGYLE MORTGAGE

18.     The Bank restates and re-alleges paragraphs 1-15, inclusive, as though fully set forth in this paragraph 18.

19.     Information Concerning the Argyle Mortgage:

a.     **Nature of Instrument:** Mortgage.

b.     **Date of Mortgage:** November 10, 2021.

c.     **Name of Mortgagor:** Nisha M. Moeller.

d.     **Name of Mortgagee:** The Huntington National Bank.

e.     **Date & Place of Recording:** November 26, 2021 in the Office of the Cook County Recorder of Deeds.

f.     **Identification of Recording:** Document No. 2133033076

g.     **Interest Subject to Mortgage:** Fee simple.

h.     **Amount of Original Indebtedness:** $578,000.00.

i.     **The Legal Description of the Real Estate, Common Address, and P.I.N.:**

(1)     **Legal Description:**

PARCEL 1:

UNIT NUMBER 3207-2W IN THE WEST END FLATS CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE: LOTS 1 TO 5 IN THOMASSON'S 4TH RAVENSWOOD ADDITION TO CHICAGO, A SUBDIVISION OF THE EAST 1/2 OF BLOCK 21 AND 28 IN JACKSON'S SUBDIVISION OF THE SOUTHEAST 1/4 OF SECTION 11 AND THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "B" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 0021147798 AS AMENDED FROM TIME TO TIME TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.

PARCEL 2:

THE EXCLUSIVE RIGHT TO THE USE OF STORAGE SPACE 11, A LIMITED COMMON ELEMENT AS DELINEATED IN THE AFORESAID DECLARATION OF CONDOMINIUM AS LIMITED COMMON ELEMENT, S-11 RECORDED IN COOK COUNTY, ILLINOIS.

(2)     **Common Address:** 3207 West Argyle Street, Unit 2W, Chicago, IL 60625.

(3)     **P.I.N.:** 13-11-423-027-1016.

j.     **Statements as to Defaults including, but not necessarily limited to, date of default, current unpaid principal balance, per diem interest accruing, and any other information concerning the default:**

(1)     A Default/Event of Default has occurred under the Note, Argyle Mortgage and Guaranty as specifically set forth in Paragraphs 13-15 herein.  Pursuant to the terms contained therein, the entire principal balance plus accrued interest and late charges is immediately due and owing.  As of August 28, 2023, the following amounts were due and payable under the Note, Argyle Mortgage and Guaranty:

| | |
|---|---|
| Principal | $554,139.68 |
| Accrued Interest | $ 27,403.34 |
| Title Service Fees | $      200.00 |
| Appraisal Fees | $   3,298.00 |
| Late Charges | $      811.06 |
| Return Check Charge | $        30.00 |

**Total:** **$585,882.08**

From and after August 28, 2023, interest accrues on the unpaid principal balance under the terms of the Note at the rate of $159.41 per day. In addition, the Bank has incurred and will continue to incur attorneys, appraisal, inspection, search, credit report and other fees and expenses as needed until the date of sale, all of which are compensable under the terms of the Note, Argyle Mortgage and Guaranty.

(2) The Bank reserves the right to allege additional defaults which may be discovered or which may occur subsequent to the filing hereof.

k. **Name of Present Owner of the Argyle Property**: Nisha M. Moeller.

l. **Names of Other Persons Who Are Joined as Defendants** and whose interests in or lien on the mortgaged real estate are sought to be terminated:

(i) Teeny Turner, LLC;
(ii) West End Flats Condominium.

m. **Names of Defendants Claimed to Be Liable for Deficiency, If Any:**

(i) Teeny Turner, LLC
(ii) Nisha M. Moeller.

n. **Capacity in Which the Bank Brings This Foreclosure:** As the owner and legal holder of the Note, Argyle Mortgage and Guaranty.

o. **Facts in Support of Shortened Redemption Period, If Sought**: None at this time.

p. **Statement That the Right of Redemption Has Been Waived By All Owners of Redemption, If Applicable:** Not applicable.

q. **Facts in Support of Request for Attorneys' Fees and of Costs and Expenses, If Applicable:** Attorneys' fees, costs and expenses are recoverable under the terms of the Note, Argyle Mortgage and Guaranty.

r. **Facts in Support of a Request for Appointment of Mortgagee in Possession or for Appointment of a Receiver, If Sought**: Upon an event of default, the Argyle Mortgage provides on page 10 that the Bank may seek the appointment of a receiver or be appointed mortgagee-in-possession to, among other things, take possession of the Property and collect the rents.

s. **Mortgagee's Position on Consent Foreclosure:** The Bank does not, in accordance with 735 ILCS 5/15-1402, agree to accept title to the Argyle Property in satisfaction of all indebtedness and obligations secured by the Argyle Mortgage without a judicial sale.

t. **Name of Defendants Whose Right to Possess the Mortgaged Real Estate, After the Confirmation of a Foreclosure Sale, Is Sought To Be Terminated and, If Not Elsewhere Stated, the Facts in Support Thereof**: Teeny Turner, LLC, Nisha M. Moeller and West End Flats Condominium.

<u>**REQUEST FOR RELIEF AS TO COUNT II**</u>

Wherefore, Plaintiff The Huntington National Bank, respectfully requests that the Court enter the following:

1. A Judgment of Foreclosure and Sale as follows:

(A) that an accounting be taken under the direction the Court of the amounts due and owing by Borrower to the Bank;

(B) that Borrower be ordered to pay to the Bank, before expiration of any redemption period (or, if no redemption period, before a short date fixed by the Court) whatever sums may appear to be due upon the taking of such account, together with attorneys' fees and costs of the proceeds (to the extent provided in the Argyle Mortgage or by law);

(C) that in default of such payment, in accordance with the judgment, the Argyle Property be sold as directed by the Court, to satisfy the amount due to the Bank as set forth in the judgment, together with the interest thereon at the statutory judgment rate from the date of the judgment;

(D) that in the event the Bank is the purchaser of the Argyle Property at such sale, the Bank may offset against the purchase price of the Argyle Property the amounts due under the Judgment of Foreclosure and order confirming the Sale;

(E)     that in the event of such sale and the failure of any person entitled thereto to redeem prior to such sale pursuant to Article 15 of the Illinois Mortgage Foreclosure Law, 735 ILCS §§ 5/15-1101 et seq., the Defendants made parties to the foreclosure in accordance with Article 15 of the Illinois Mortgage Foreclosure Law, and all non-record claimants given notice of the foreclosure in accordance with Article 15 of the Illinois Mortgage Foreclosure Law, and all persons claiming by, through or under them, and eachand any and all of them, may be forever barred and foreclosed of any right, title, interest, claim, lien, or right to redeem in and to the mortgaged real estate; and

(F)     that if no redemption is made prior to such sale, a deed may be issued to the purchaser thereat according to law and such purchaser be let into possession of the Argyle Property in accordance with Article 17 of the Illinois Mortgage Foreclosure Law §§ 735 ILCS 5/15-1701 et seq.

2.     An order appointing the Bank as mortgagee in possession or, in the alternative, an order appointing a receiver, if applicable;

3.     A personal judgment of deficiency against Defendants, Teeny Turner, LLC and Nisha M. Moeller;

4.     A judgment for attorneys' fees, costs and expenses; and

5.     Such other and further relief to which the Bank may be entitled.

## COUNT III – BREACH OF NOTE
### (Against Borrower)

20.     The Bank restates and re-alleges paragraphs 1-15, inclusive, as though fully set forth in this paragraph 20.

21.     The Bank has performed any and all conditions precedent on its part under the Note.

22.     The Bank has demanded payment from Borrower, but Borrower has failed to make payment as required by the Note.

23.     Under the terms of the Note, Borrower is indebted to the Bank for all amounts now due and owing, together with further accruing interest, and all sums incurred by the Bank in the collection of such amounts due, including attorneys' fees and court costs.

## REQUEST FOR RELIEF AS TO COUNT III

Wherefore, Plaintiff The Huntington National Bank, requests that the Court enter the following:

(1)     A judgment in its favor and against Defendant Teeny Turner, LLC in the amount of at least $585,882.08 as of August 28, 2023, together with further accruing interest, costs, charges, fees and attorneys' fees; and

(2)     Such other and further relief as the Court may deem just and equitable.

## COUNT IV – BREACH OF GUARANTY
### (Against Moeller)

24.     The Bank restates and re-alleges paragraphs 1-15, inclusive, as though fully set forth in this paragraph 24.

25.     Under the Guaranty, Moeller guaranteed the full and punctual payment and satisfaction of all of the Borrower's obligations under the Note.

26.     Borrower's obligations under the Note are presently due and payable in full in the amounts set forth above.

27.     Under the terms of the Guaranty, Moeller is indebted to the Bank for all amounts now due and owing under the Note, together with further accruing interest, and all sums incurred by the Bank in the collection of such amounts due, including attorneys' fees and court costs.

28.     The Bank has made demand upon Moeller for payment of all amounts due under the Guaranty, but she has failed to make the required payment.

29.     Accordingly, Moeller is indebted to the Bank as of August 28, 2023 in the amount of at least $585,882.08, together with further accruing interest, costs, charges and fees, and all sums incurred by the Bank in the collection of such amounts due, including attorneys' fees and court costs.

## REQUEST FOR RELIEF AS TO COUNT IV

Wherefore, Plaintiff The Huntington National Bank, requests that the Court enter the following:

(1)     A judgment in its favor and against Nisha M. Moeller in the amount of at least $585,882.08 as of  August 28, 2023, together with further accruing interest, costs, charges, fees and attorneys' fees; and

(2)     Such other and further relief as the Court may deem just and equitable.

## COUNT V – REFORMATION OF THE RANDOLPH MORTGAGE

30.     The Bank restates and re-alleges paragraphs 1-15, inclusive, as though fully set forth in this paragraph 30.

31.     Due to a scrivener's error, the Randolph Mortgage incorrectly references "The Residences at the Joffrey Tower Condominium" as "The Residences at the Joffrey To Condominium."

32.     Specifically, due to the scrivener's error, the legal description of the Randolph Property provides as follows:

UNIT 2902, TOGETHER WITH THE EXCLUSIVE RIGHT TO USE STORAGE SPACE S148, LIMITED COMMON ELEMENT, IN THE RESIDENCES AT THE JOFFREY TO CONDOMINIUM AS DELINEATED ON THE PLAT OF SURVEY OF THAT PART OF THE FOLLOWING PARCELS OF REAL ESTATE:

PARCEL 1:

LOTS 25 TO 31, INCLUSIVE, IN BLOCK 9 IN FORT DEARBORN ADDITION TO CHICAGO IN THE SOUTH WEST 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS. WHICH SURVEY IS ATTACHED AS EXHIBIT C TO THE DECLARATION OF CONDOMINIUM RECORDED JANUARY 23, 2008 AS DOCUMENT NUMBER 0802803105, AS MAY BE AMENDED FROM TIME TO TIME TOGETHER WITH THEIR UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO AND FOR THE BENEFIT OF PARCEL 1 AS CREATED BY THE DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS FOR THE STATE RANDOLPH DEVELOPMENT, RECORDED OCTOBER 19, 2007 AS DOCUMENT NUMBER 0729260064 FOR SUPPORT, INGRESS AND EGRESS, MAINTENANCE, UTILITIES, ENCROACHMENTS, ELEVATORS AND FACILITIES, OVER THE LAND DESCRIBED THEREIN AND AS MORE PARTICULARLY DESCRIBED AND DEFINED THEREIN.

33.     The correct legal description on the Randolph Property is as follows:

UNIT 2902, TOGETHER WITH THE EXCLUSIVE RIGHT TO USE STORAGE SPACE S148, LIMITED COMMON ELEMENT, IN THE RESIDENCES AT THE JOFFREY TOWER CONDOMINIUM AS DELINEATED ON THE PLAT OF SURVEY OF THAT PART OF THE FOLLOWING PARCELS OF REAL ESTATE:

PARCEL 1:

LOTS 25 TO 31, INCLUSIVE, IN BLOCK 9 IN FORT DEARBORN ADDITION TO CHICAGO IN THE SOUTH WEST 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS. WHICH SURVEY IS ATTACHED AS EXHIBIT C TO THE DECLARATION OF CONDOMINIUM RECORDED JANUARY 23, 2008 AS DOCUMENT NUMBER 0802803105, AS MAY BE AMENDED FROM TIME TO TIME TOGETHER WITH THEIR UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

PARCEL 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO AND FOR THE BENEFIT OF PARCEL 1 AS CREATED BY THE DECLARATION OF COVENANTS, CONDITIONS, RESTRICTIONS AND EASEMENTS FOR THE STATE RANDOLPH

DEVELOPMENT, RECORDED OCTOBER 19, 2007 AS DOCUMENT NUMBER 0729260064 FOR SUPPORT, INGRESS AND EGRESS, MAINTENANCE, UTILITIES, ENCROACHMENTS, ELEVATORS AND FACILITIES, OVER THE LAND DESCRIBED THEREIN AND AS MORE PARTICULARLY DESCRIBED AND DEFINED THEREIN.

34. It was the Bank and Borrower's intent to create a valid mortgage contract containing the correct legal description of the Randolph Property as described herein.

35. The Bank now seeks to correct the Randolph Mortgage to reflect the proper legal description.

## REQUEST FOR RELIEF AS TO COUNT V

Wherefore, Plaintiff The Huntington National Bank, requests that the Court enter an order as follows:

(1) Judicially reforming the Randolph Mortgage to correct its legal description to the legal description identified in Paragraph 33, above;

(2) Providing such other and further relief as the Court may deem just and equitable.

## COUNT VI – REPLEVIN

36. The Bank restates and re-alleges paragraphs 1-15, inclusive, as though fully set forth in this paragraph 36.

37. On or about November 10, 2021, in connection with the Loan and to further secure Borrower's repayment obligations, Borrower executed and delivered to the Bank a certain Commercial Security Agreement (the "CSA"). A copy of the CSA is attached hereto as **Exhibit E**.

38. The CSA provides that the Bank has a perfected security interest in, *inter alia*, all of the Borrower's inventory and equipment (the "Personal Property").

39.     The security interest in the Personal Property conveyed by the CSA was also perfected by the filing of that certain UCC Financing Statement naming Borrower as debtor, filed on November 16, 2021, as Document No. 27887961, with the Illinois Secretary of State, in favor of the Bank (the "Financing Statement").  A copy of the Financing Statement is attached hereto as **Exhibit F**.

40.     The Personal Property consists of fitness equipment and related products.

41.     Borrower wrongfully detains and withholds the Personal Property from the Bank.

42.     The fair market value of the Personal Property is $10,740.00.

43.     The Bank claims the value of Personal Property not delivered to the officer under the order for replevin entered by this Court.

<u>**REQUEST FOR RELIEF AS TO COUNT VI**</u>

Wherefore, Plaintiff The Huntington National Bank, requests that the Court enter an order as follows:

(1)     An Order of Replevin issue and for judgment against Defendant, Teeny Turner, LLC, for possession of the Personal Property, the value of Personal Property not delivered; and damages for the detention;

(2)     Providing such other and further relief as the Court may deem just and equitable.

Respectfully Submitted,

**THE HUNTINGTON NATIONAL BANK**

By: /s/ Andrew H. Eres

Andrew H. Eres (ILARDC 6237032)
Jeremy P. Kreger (ILARDC 6280403)
Ronald A. Damashek (IARDC 6183820)
Dickinson Wright P LLC
55 West Monroe, Suite 1200
Chicago, Illinois 60603
(312) 641-0060
aeres@dickinson-wright.com
jkreger@dickinson-wright.com
rdamashek@dickinson-wright.com

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| THE HUNTINGTON NATIONAL BANK, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| | ) | Case No. |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TEENY TURNER, LLC, NISHA M. MOELLER, THE | ) | |
| RESIDENCES AT THE JOFFREY TOWER | ) | |
| CONDOMINIUM ASSOCIATION, and WEST END | ) | |
| FLATS CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
|     Defendants. | ) | |

## **VERIFICATION**

Under penalties as provided by law pursuant to §1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

By: _____

Brian Rogg, Vice President
The Huntington National Bank

Subscribed and sworn to before me
this 13 day of September, 2023.

_____
Notary Public

JAMIE LAWRENCE
HERRMANN
Notary Public
State of Ohio
My Comm. Expires
June 13, 2028

20

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| THE HUNTINGTON NATIONAL BANK, | ) |
| | ) |
|      Plaintiff, | ) |
| | ) |
| | )   Case No. |
| | ) |
| | ) |
| v. | ) |
| | ) |
| TEENY TURNER, LLC, NISHA M. MOELLER, THE | ) |
| RESIDENCES AT THE JOFFREY TOWER | ) |
| CONDOMINIUM ASSOCIATION, and WEST END | ) |
| FLATS CONDOMINIUM ASSOCIATION, | ) |
| | ) |
|      Defendants. | ) |

## <u>AFFIDAVIT PURSUANT TO SUPREME COURT RULE 222</u>

Pursuant to Illinois Supreme Court Rule 222(B), counsel for the above-named Plaintiff certifies that Plaintiff seeks money damages in excess of $50,000.00, not including interest, costs, and attorneys' fees.

Respectfully Submitted,


By:    /s/Andrew H. Eres     
       Attorney for Plaintiff

Andrew H. Eres (ILARDC 6237032)
Jeremy P. Kreger (ILARDC 6280403)
Ronald A. Damashek (IARDC 6183820)
Dickinson Wright P LLC
55 West Monroe, Suite 1200
Chicago, Illinois 60603
(312) 641-0060
aeres@dickinson-wright.com
jkreger@dickinson-wright.com
rdamashek@dickinson-wright.com


4881-3497-7662 v2 [25535-606]

# Exhibit A



U.S. Small Business Administration

# NOTE

| SBA Loan # | |
|---|---|
| SBA Loan Name | Teeny Turner, LLC |
| Date | November 10, 2021 |
| Loan Amount | $578,000.00 |
| Interest Rate | Variable WSJ Prime Quarterly Adjusting + 2.25% |
| Borrower | Teeny Turner, LLC |
| Operating Company | |
| Lender | The Huntington National Bank |

## 1. PROMISE TO PAY:

In return for the Loan, Borrower promises to pay to the order of Lender the amount of

Five Hundred Seventy Eight Thousand and 00/100 _____ Dollars,

interest on the unpaid principal balance, and all other amounts required by this Note.

## 2. DEFINITIONS:

"Collateral" means any property taken as security for payment of this Note or any guarantee of this Note.

"Guarantor" means each person or entity that signs a guarantee of payment of this Note.

"Loan" means the loan evidenced by this Note.

"Loan Documents" means the documents related to this loan signed by Borrower, any Guarantor, or anyone who pledges collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

3. PAYMENT TERMS:

Borrower must make all payments at the place Lender designates. The payment terms for this Note are:

The interest rate on this Note will fluctuate. The initial interest rate is 5.50% per year. This initial rate is the Prime Rate in effect on the first business day of the month in which SBA received the loan application, plus 2.25%. The initial interest rate must remain in effect until the first change period begins unless changed in accordance with SOP 50 10.

Borrower must pay a total of 9 payments of interest only on the disbursed principal balance beginning one month from the month this Note is dated and every month thereafter; payments must be made on the fifth calendar day in the months they are due.

Borrower must pay principal and interest payments of $6,655.29 every month, beginning ten months from the month this Note is dated; payments must be made on the fifth calendar day in the months they are due.

Lender will apply each installment payment first to pay interest accrued to the day Lender receives the payment, then to bring principal current, then to pay any late fees, and will apply any remaining balance to reduce principal.

The interest rate will be adjusted every calendar quarter (the "change period") beginning January 1, 2022 (date of first rate adjustment).

The "Prime Rate" is the Prime Rate in effect on the first business day of the month (as published in the Wall Street Journal newspaper) in which SBA received the application, or the first day of the month in which any interest rate change occurs. Base Rates will be rounded to two decimal places with .004 being rounded down and .005 being rounded up.

The adjusted interest rate will be 2.25% above the Prime Rate. Lender will adjust the interest rate on the first calendar day of each change period. The change in interest rate is effective on that day whether or not Lender gives Borrower notice of the change.

The interest rate identified in the Note may not be changed during the life of the Loan unless changed in accordance with SOP 50 10.

The interest rate adjustment period may only be changed in accordance with SOP 50 10.

Lender must adjust the payment amount at least annually as needed to amortize principal over the remaining term of the note.

If SBA purchases the guaranteed portion of the unpaid principal balance, the interest rate becomes fixed at the rate in effect at the time of the earliest uncured payment default. If there is no uncured payment default, the rate becomes fixed at the rate in effect at the time of purchase.

Loan Prepayment:
Notwithstanding any provision in this Note to the contrary:
Borrower may prepay this Note. Borrower may prepay 20 percent or less of the unpaid principal balance at any time without notice. If Borrower prepays more than 20 percent and the Loan has been sold on the secondary market, Borrower must:
a. Give Lender written notice;
b. Pay all accrued interest; and
c. If the prepayment is received less than 21 days from the date Lender receives the notice, pay an amount equal to 21 days' interest from the date lender receives the notice, less any interest accrued during the 21 days and paid under subparagraph b., above.
If Borrower does not prepay within 30 days from the date Lender receives the notice, Borrower must give Lender a new notice.

All remaining principal and accrued interest is due and payable 10 years from date of Note.

Late Charge: If a payment on this Note is more than 10 days late, Lender may charge Borrower a late fee of up to 5.00% of the unpaid portion of the regularly scheduled payment.

4.  DEFAULT:

Borrower is in default under this Note if Borrower does not make a payment when due under this Note, or if Borrower or Operating Company:

A.  Fails to do anything required by this Note and other Loan Documents;
B.  Defaults on any other loan with Lender;
C.  Does not preserve, or account to Lender's satisfaction for, any of the Collateral or its proceeds;
D.  Does not disclose, or anyone acting on their behalf does not disclose, any material fact to Lender or SBA;
E.  Makes, or anyone acting on their behalf makes, a materially false or misleading representation to Lender or SBA;
F.  Defaults on any loan or agreement with another creditor, if Lender believes the default may materially affect Borrower's ability to pay this Note;
G.  Fails to pay any taxes when due;
H.  Becomes the subject of a proceeding under any bankruptcy or insolvency law;
I.  Has a receiver or liquidator appointed for any part of their business or property;
J.  Makes an assignment for the benefit of creditors;
K.  Has any adverse change in financial condition or business operation that Lender believes may materially affect Borrower's ability to pay this Note;
L.  Reorganizes, merges, consolidates, or otherwise changes ownership or business structure without Lender's prior written consent; or
M.  Becomes the subject of a civil or criminal action that Lender believes may materially affect Borrower's ability to pay this Note.

5.  LENDER'S RIGHTS IF THERE IS A DEFAULT:

Without notice or demand and without giving up any of its rights, Lender may:

A.  Require immediate payment of all amounts owing under this Note;
B.  Collect all amounts owing from any Borrower or Guarantor;
C.  File suit and obtain judgment;
D.  Take possession of any Collateral; or
E.  Sell, lease, or otherwise dispose of, any Collateral at public or private sale, with or without advertisement.

6.  LENDER'S GENERAL POWERS:

Without notice and without Borrower's consent, Lender may:

A.  Bid on or buy the Collateral at its sale or the sale of another lienholder, at any price it chooses;
B.  Incur expenses to collect amounts due under this Note, enforce the terms of this Note or any other Loan Document, and preserve or dispose of the Collateral. Among other things, the expenses may include payments for property taxes, prior liens, insurance, appraisals, environmental remediation costs, and reasonable attorney's fees and costs. If Lender incurs such expenses, it may demand immediate repayment from Borrower or add the expenses to the principal balance;
C.  Release anyone obligated to pay this Note;
D.  Compromise, release, renew, extend or substitute any of the Collateral; and
E.  Take any action necessary to protect the Collateral or collect amounts owing on this Note.

7. **WHEN FEDERAL LAW APPLIES:**

When SBA is the holder, this Note will be interpreted and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Note, Borrower may not claim or assert against SBA any local or state law to deny any obligation, defeat any claim of SBA, or preempt federal law.

8. **SUCCESSORS AND ASSIGNS:**

Under this Note, Borrower and Operating Company include the successors of each, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A. All individuals and entities signing this Note are jointly and severally liable.

B. Borrower waives all suretyship defenses.

C. Borrower must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

D. Lender may exercise any of its rights separately or together, as many times and in any order it chooses. Lender may delay or forgo enforcing any of its rights without giving up any of them.

E. Borrower may not use an oral statement of Lender or SBA to contradict or alter the written terms of this Note.

F. If any part of this Note is unenforceable, all other parts remain in effect.

G. To the extent allowed by law, Borrower waives all demands and notices in connection with this Note, including presentment, demand, protest, and notice of dishonor. Borrower also waives any defenses based upon any claim that Lender did not obtain any guarantee; did not obtain, perfect, or maintain a lien upon Collateral; impaired Collateral; or did not obtain the fair market value of Collateral at a sale.

10. STATE-SPECIFIC PROVISIONS:

---

IMPORTANT INFORMATION ABOUT PROCEDURES REQUIRED BY THE USA PATRIOT ACT

To help the government fight the funding of terrorism and money laundering activities. Federal Law requires all financial institutions to obtain, verify, and record information that identifies each entity or person who opens an account or establishes a relationship with the Lender.

What this means: When an entity or person opens an account or establishes a relationship with the Lender, the Lender may ask for the name, address, date of birth and other information that will allow Lender to identify the entity or person who opens an account or establishes a relationship with the Lender. The Lender may also ask to see identify documents for the entity or person.

ILLINOIS INSURANCE NOTICE. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

CONFESSION OF JUDGMENT. Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

Multiple Advances:

This Note evidences a straight line of credit. Once the total amount of principal has been advanced, Borrower is not entitled to further loan advances. Advances under this Note may be requested either orally or in writing by Borrower or by an authorized person. Lender may, but need not, require that all oral requests be confirmed in writing. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. Borrowers agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (a) Borrower or any guarantor is in default under the terms of this Note or any agreement that borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (b) Borrower or any guarantor ceases doing business or is insolvent; (c) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; (d) Borrower has applied funds provided pursuant to this Note for purpose other than those authorized by Lender; or (e) Lender in good faith deems itself insecure under this Note or any other agreement between Lender and Borrower.

Draw Period:

The proceeds of the loan evidenced hereby may be advanced in partial amounts during the term hereof and prior to maturity, and no partial advance shall be made after August 5, 2022.

---

11. BORROWER'S NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated under this Note as Borrower.

Teeny Turner, LLC

_____

Nisha M. Moeller, Member
November 10, 2021



U.S. Small Business Administration

U.S. Small Business Administration

# UNCONDITIONAL GUARANTEE

| SBA Loan # | |
|---|---|
| SBA Loan Name | Teeny Turner, LLC |
| Guarantor | Nisha M. Moeller |
| Borrower | Teeny Turner, LLC |
| Lender | Huntington National Bank |
| Date | November 10, 2021 |
| Note Amount | $578,000.00 |

## 1. GUARANTEE:

Guarantor unconditionally guarantees payment to Lender of all amounts owing under the Note. This Guarantee remains in effect until the Note is paid in full. Guarantor must pay all amounts due under the Note when Lender makes written demand upon Guarantor. Lender is not required to seek payment from any other source before demanding payment from Guarantor.

## 2. NOTE:

The "Note" is the promissory note dated _____ November 10, 2021 _____ in the principal amount of

_____ Five Hundred Seventy Eight Thousand and 00/100 _____ Dollars,

from Borrower to Lender. It includes any assumption, renewal, substitution, or replacement of the Note, and multiple notes under a line of credit.

## 3. DEFINITIONS:

"Collateral" means any property taken as security for payment of the Note or any guarantee of the Note.

"Loan" means the loan evidenced by the Note.

"Loan Documents" means the documents related to the Loan signed by Borrower, Guarantor or any other guarantor, or anyone who pledges Collateral.

"SBA" means the Small Business Administration, an Agency of the United States of America.

4.    LENDER'S GENERAL POWERS:

Lender may take any of the following actions at any time, without notice, without Guarantor's consent, and without making demand upon Guarantor:

A.    Modify the terms of the Note or any other Loan Document except to increase the amounts due under the Note;

B.    Refrain from taking any action on the Note, the Collateral, or any guarantee;

C.    Release any Borrower or any guarantor of the Note;

D.    Compromise or settle with the Borrower or any guarantor of the Note;

E.    Substitute or release any of the Collateral, whether or not Lender receives anything in return;

F.    Foreclose upon or otherwise obtain, and dispose of, any Collateral at public or private sale, with or without advertisement;

G.    Bid or buy at any sale of Collateral by Lender or any other lienholder, at any price Lender chooses; and

H.    Exercise any rights it has, including those in the Note and other Loan Documents.

These actions will not release or reduce the obligations of Guarantor or create any rights or claims against Lender.

5.    FEDERAL LAW:

When SBA is the holder, the Note and this Guarantee will be construed and enforced under federal law, including SBA regulations. Lender or SBA may use state or local procedures for filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using such procedures, SBA does not waive any federal immunity from state or local control, penalty, tax, or liability. As to this Guarantee, Guarantor may not claim or assert any local or state law against SBA to deny any obligation, defeat any claim of SBA, or preempt federal law.

6.    RIGHTS, NOTICES, AND DEFENSES THAT GUARANTOR WAIVES:

To the extent permitted by law,

A.    Guarantor waives all rights to:
1)    Require presentment, protest, or demand upon Borrower;
2)    Redeem any Collateral before or after Lender disposes of it;
3)    Have any disposition of Collateral advertised; and
4)    Require a valuation of Collateral before or after Lender disposes of it.

B.    Guarantor waives any notice of:
1)    Any default under the Note;
2)    Presentment, dishonor, protest, or demand;
3)    Execution of the Note;
4)    Any action or inaction on the Note or Collateral, such as disbursements, payment, nonpayment, acceleration, intent to accelerate, assignment, collection activity, and incurring enforcement expenses;
5)    Any change in the financial condition or business operations of Borrower or any guarantor;
6)    Any changes in the terms of the Note or other Loan Documents, except increases in the amounts due under the Note; and
7)    The time or place of any sale or other disposition of Collateral.

C.    Guarantor waives defenses based upon any claim that:
1)    Lender failed to obtain any guarantee;
2)    Lender failed to obtain, perfect, or maintain a security interest in any property offered or taken as Collateral;
3)    Lender or others improperly valued or inspected the Collateral;
4)    The Collateral changed in value, or was neglected, lost, destroyed, or underinsured;

5) Lender impaired the Collateral;
6) Lender did not dispose of any of the Collateral;
7) Lender did not conduct a commercially reasonable sale;
8) Lender did not obtain the fair market value of the Collateral;
9) Lender did not make or perfect a claim upon the death or disability of Borrower or any guarantor of the Note;
10) The financial condition of Borrower or any guarantor was overstated or has adversely changed;
11) Lender made errors or omissions in Loan Documents or administration of the Loan;
12) Lender did not seek payment from the Borrower, any other guarantors, or any Collateral before demanding payment from Guarantor:
13) Lender impaired Guarantor's suretyship rights;
14) Lender modified the Note terms, other than to increase amounts due under the Note. If Lender modifies the Note to increase the amounts due under the Note without Guarantor's consent, Guarantor will not be liable for the increased amounts and related interest and expenses, but remains liable for all other amounts;
15) Borrower has avoided liability on the Note; or
16) Lender has taken an action allowed under the Note, this Guarantee, or other Loan Documents.

7. **DUTIES AS TO COLLATERAL:**

Guarantor will preserve the Collateral pledged by Guarantor to secure this Guarantee. Lender has no duty to preserve or dispose of any Collateral.

8. **SUCCESSORS AND ASSIGNS:**

Under this Guarantee, Guarantor includes heirs and successors, and Lender includes its successors and assigns.

9. **GENERAL PROVISIONS:**

A. ENFORCEMENT EXPENSES. Guarantor promises to pay all expenses Lender incurs to enforce this Guarantee, including, but not limited to, attorney's fees and costs.

B. SBA NOT A CO-GUARANTOR. Guarantor's liability will continue even if SBA pays Lender. SBA is not a co-guarantor with Guarantor. Guarantor has no right of contribution from SBA.

C. SUBROGATION RIGHTS. Guarantor has no subrogation rights as to the Note or the Collateral until the Note is paid in full.

D. JOINT AND SEVERAL LIABILITY. All individuals and entities signing as Guarantor are jointly and severally liable.

E. DOCUMENT SIGNING. Guarantor must sign all documents necessary at any time to comply with the Loan Documents and to enable Lender to acquire, perfect, or maintain Lender's liens on Collateral.

F. FINANCIAL STATEMENTS. Guarantor must give Lender financial statements as Lender requires.

G. LENDER'S RIGHTS CUMULATIVE, NOT WAIVED. Lender may exercise any of its rights separately or together, as many times as it chooses. Lender may delay or forgo enforcing any of its rights without losing or impairing any of them.

H. ORAL STATEMENTS NOT BINDING. Guarantor may not use an oral statement to contradict or alter the written terms of the Note or this Guarantee, or to raise a defense to this Guarantee.

I. SEVERABILITY. If any part of this Guarantee is found to be unenforceable, all other parts will remain in effect.

J. CONSIDERATION. The consideration for this Guarantee is the Loan or any accommodation by Lender as to the Loan.

10. STATE-SPECIFIC PROVISIONS:

IMPORTANT INFORMATION ABOUT PROCEDURES REQUIRED BY THE USA PATRIOT ACT

To help the government fight the funding of terrorism and money laundering activities. Federal Law requires all financial institutions to obtain, verify, and record information that identifies each entity or person who opens an account or establishes a relationship with the Lender.

What this means: When an entity or person opens an account or establishes a relationship with the Lender, the Lender may ask for the name, address, date of birth and other information that will allow the Lender to identify the entity or person who opens an account or establishes a relationship with the Lender. The Lender may also ask to see identify documents for the entity or person.

LLINOIS INSURANCE NOTICE. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in the collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by their agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on Borrower's own.

CONFESSION OF JUDGMENT. Borrower hereby irrevocably authorizes and empowers any attorney-at-law to appear in any court of record and to confess judgment against Borrower for the unpaid amount of this Note as evidenced by an affidavit signed by an officer of Lender setting forth the amount then due, attorneys' fees plus costs of suit, and to release all errors, and waive all rights of appeal. If a copy of this Note, verified by an affidavit, shall have been filed in the proceeding, it will not be necessary to file the original as a warrant of attorney. Borrower waives the right to any stay of execution and the benefit of all exemption laws now or hereafter in effect. No single exercise of the foregoing warrant and power to confess judgment will be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void; but the power will continue undiminished and may be exercised from time to time as Lender may elect until all amounts owing on this Note have been paid in full. Borrower hereby waives and releases any and all claims or causes of action which Borrower might have against any attorney acting under the terms of authority which Borrower has granted herein arising out of or connected with the confession of judgment hereunder.

11. GUARANTOR ACKNOWLEDGMENT OF TERMS.

Guarantor acknowledges that Guarantor has read and understands the significance of all terms of the Note and this Guarantee, including all waivers.

12. GUARANTOR NAME(S) AND SIGNATURE(S):

By signing below, each individual or entity becomes obligated as Guarantor under this Guarantee.

Nisha M. Moeller, Individually
November 10, 2021

**Exhibit C**

# Illinois Anti-Predatory Lending Database Program

## Certificate of Exemption



**Report Mortgage Fraud
844-768-1713**

Doc#. 2133025052 Fee: $98.00
Karen A. Yarbrough
Cook County Clerk
Date: 11/26/2021 11:33 AM Pg: 1 of 18

The property identified as:    **PIN:** 17-10-305-011-1146

**Address:**
**Street:**          8 East Randolph St #2902
**Street line 2:**
**City:** Chicago          **State:** IL          **ZIP Code:** 60601

**Lender:** The Huntington National Bank

**Borrower:** Teeny Turner LLC

**Loan / Mortgage Amount:** $578,000.00

This property is located within the program area and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity or person.

**Certificate number:** ███████████████          **Execution date:** 11/10/2021

Provided by Cook County Clerk - Not for Resale

RECORDATION REQUESTED BY:
THE HUNTINGTON NATIONAL BANK
Chicago Commercial Lending
501 West North Avenue
Melrose Park, IL 60160

WHEN RECORDED MAIL TO:
THE HUNTINGTON NATIONAL BANK
GW1W31
PO BOX 341470
COLUMBUS, OH 43234-1470

_____
                                                    FOR RECORDER'S USE ONLY

This Mortgage prepared by:
    Megan LeMasters
    THE HUNTINGTON NATIONAL BANK
    7 Easton Oval
    Columbus, OH 43219

_____



## MORTGAGE

**MAXIMUM LIEN.** At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $578,000.00.

THIS MORTGAGE dated November 10, 2021, is made and executed between Nisha M. Moeller, a single woman, whose address is 8 East Randolph Street #2902, Chicago, IL 60601; (referred to below as "Grantor") and THE HUNTINGTON NATIONAL BANK, whose address is 501 West North Avenue, Melrose Park, IL 60160 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Cook County, State of Illinois:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as 8 East Randolph Street #2902, Chicago, IL 60601. The Real Property tax identification number is 17-10-305-011-1146.

**CROSS-COLLATERALIZATION.** In addition to the Guaranty, this Mortgage secures all obligations, debts and



## MORGAGE
## (Continued)

liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable. If the Lender is required to give notice of the right to cancel under Truth in Lending in connection with any additional loans, extensions of credit and other liabilities or obligations of Grantor to Lender, then this Mortgage shall not secure additional loans or obligations unless and until such notice is given.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** In addition to the Note, this Mortgage secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PERFORMANCE OF A GUARANTY FROM GRANTOR TO LENDER, AND DOES NOT DIRECTLY SECURE THE OBLIGATIONS DUE LENDER UNDER THE NOTE, (B) PAYMENT OF THE INDEBTEDNESS AND (C) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** This Mortgage secures a guaranty and does not directly secure the Indebtedness due Lender under the Note. Grantor waives any and all rights and defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of, (a) any "one-action" or "anti-deficiency" law, or any other law that may prevent Lender from bringing any action or claim for deficiency against Borrower, (b) any election of remedies by Lender which may limit Grantor's rights to proceed against any party indebted under the Note, or (c) any disability or defense of any party indebted under the Note, any other guarantor or any other person by reason of cessation of the Indebtedness due under the Note for any reason other than full payment of the Note.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall strictly perform all of Grantor's obligations under the Guaranty and under this Mortgage.



## MORTGAGE
### (Continued)

Page 3

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with



## MORGAGE
### (Continued)

Page 4

Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and



## MORTGAGE
### (Continued)

attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of twenty (20) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost



## MORGAGE
### (Continued)

Page 6

of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies



**MORGAGE**
**(Continued)**                                                                                      Page 7

with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to an existing lien. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such Indebtedness, any default under the instruments evidencing such Indebtedness, or any default under any security documents for such Indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.



## MORGAGE
## (Continued)

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This Instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor shall strictly perform all of Grantor's obligations under the Guaranty and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute



## MORGAGE
### (Continued)

Page 9

and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit



## MORGAGE
### (Continued)

of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed.



## MORGAGE
## (Continued)

Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost



# MORTGAGE
## (Continued)

of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Default.** Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any rules or regulations thereunder, shall be an event of default under this Mortgage. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Mortgage.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH REGARD TO ASSIGNMENT OF RENTS.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.



## MORTGAGE
### (Continued)

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Mortgage.

**INTERPRETATION.** If there is more than one Grantor, each reference in this Agreement to "Grantor" shall apply to each Grantor separately as well as to all of them jointly, and the obligations, covenants, promises, warranties and representations of Grantor shall be joint and several.

**APPLICABLE LAW.** The loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: a) When SBA is the holder of the Note, this document and all documents evidencing or securing the loan will be construed in accordance with federal law. b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Grantor may claim or assert against SBA any local or state law to deny any obligation of Borrower or Grantor, or defeat any claim of SBA with respect to the loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**COUNTERPARTS.** This document may be executed by the parties hereto in any number of separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand



## MORGAGE
### (Continued)

strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code.

**Borrower.** The word "Borrower" means Teeny Turner, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this



## MORTGAGE
### (Continued)

Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means Nisha M. Moeller.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Grantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all obligations of Grantor under the Guaranty, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the obligations under the Guaranty and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means THE HUNTINGTON NATIONAL BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 10, 2021, in the original principal amount of **$578,000.00** from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. However, should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Personal Property is limited to only those items specifically covered (currently or hereafter) by Coverage A of the standard flood insurance policy issued in accordance with the National Flood Insurance Program or under equivalent coverage similarly issued by a private insurer to satisfy the National Flood Insurance Act (as amended).

**Property.** The word "Property" means collectively the Real Property and the Personal Property.



# MORTGAGE
## (Continued)

Page 16

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

GRANTOR:

X _____
Nisha M. Moeller

---

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF ___Illinois___ )
) SS
COUNTY OF ___Cook___ )

On this day before me, the undersigned Notary Public, personally appeared Nisha M. Moeller, a single woman, to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ___10th___ day of ___November___ 20 __21__.

By ___Nisha M Moeller___          Residing at ___B E Randolph Unit 2902___

Notary Public in and for the State of ___Illinois___

My commission expires ___7/2/22___

OFFICIAL SEAL
TAUSEEF S GILLANI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 07/02/2022

OFFICIAL SEAL
TAUSEEF S GILLANI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 07/02/2022

Copy supplied by Cook County Clerk - Not for Resale

## EXHIBIT "A" LEGAL DESCRIPTION

Page: 1 of 1

Account #: 27701183
Order Date : 10/04/2021
Reference :
Name : NISHA MOELLER
Deed Ref : 0916931033

Index #:
Registered Land:
Parcel #: 17-10-305-011-1146

SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS:

UNIT 2902, TOGETHER WITH THE EXCLUSIVE RIGHT TO USE STORAGE SPACE S148,
LIMITED COMMON ELEMENT, IN THE RESIDENCES AT THE JOFFREY TO CONDOMINIUM AS
DELINEATED ON THE PLAT OF SURVEY OF THAT PART OF THE FOLLOWING PARCELS OF
REAL ESTATES:

PARCEL 1:

LOTS 25 TO 31, INCLUSIVE, IN BLOCK 9 IN FORT DEARBORN ADDITION TO CHICAGO IN
SOUTH WEST FRACTIONAL 1/4 OF SECTION 10, TOWNSHIP 39 NORTH, RANGE 14 EAST TITHE
THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

WHICH SURVEY IS ATTACHED AS EXHIBIT C TO THE DECLARATION OF CONDOMINIUM
RECORDED JANUARY 23, 2008 AS DOCUMENT NUMBER 0802803105, AS MAY BE AMENDED
FROM TIME TO TIME TOGETHER WITH THEIR UNDIVIDED PERCENTAGE INTEREST IN THE
COMMON ELEMENTS.

PARED 2:

NON-EXCLUSIVE EASEMENTS APPURTENANT TO AND FOR THE BENEFIT OF PARCEL 1
AS CREATED BY THE DECLARATION COVENANTS, CONDITIONS, RESTRICTIONS AND
EASEMENTS FOR THE STATE RANDOLPH DEVELOPMENT, RECORDED OCTOBER 19, 2007
AS DOCUMENT NUMBER 0729260064 FOR SUPPORT INGRESS AND EGRESS, MAINTENANCE,
UTILITIES. ENCROACHMENTS. ELEVATORS AND FACILITIES OVER THE LAND DESCRIBED
THEREIN AND AS MORE PARTICULARLY DESCRIBED AND DEFINED THEREIN.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN INSTRUMENT NO. 0916931033
OF THE COOK COUNTY, ILLINOIS RECORDS.
SUBJECTED TO ALL EASEMENTS, COVENANTS, CONDITIONS, RESERVATIONS, LEASES AND
RESTRICTIONS OF RECORD, ALL LEGAL HIGHWAYS, ALL RIGHTS OF WAY, ALL ZONING,
BUILDING AND OTHER LAWS, ORDINANCES AND REGULATIONS, ALL RIGHTS OF TENANTS IN
POSSESSION, AND ALL REAL ESTATE TAXES AND ASSESSMENTS NOT YET DUE AND PAYABLE

**Exhibit D**

# Illinois Anti-Predatory Lending Database Program

Doc#. 2133033076 Fee: $98.00
Karen A. Yarbrough
Cook County Clerk
Date: 11/26/2021 11:33 AM Pg: 1 of 18

### Certificate of Exemption



**Report Mortgage Fraud**
**844-768-1713**

The property identified as:     **PIN:** 13-11-423-027-1016

**Address:**
**Street:**        3207 West Argyle St #2W
**Street line 2:**
**City:** Chicago              **State:** IL          **ZIP Code:** 60625

**Lender:** The Huntington National Bank

**Borrower:** Teeny Turner LLC

**Loan / Mortgage Amount:** $578,000.00

This property is located within the program area and the transaction is exempt from the requirements of 765 ILCS 77/70 et seq. because the application was taken by an exempt entity or person

**Certificate number:** ███████████          **Execution date:** 11/10/2021

Provided by Cook County Clerk - Not for Resale

RECORDATION REQUESTED BY:
   THE HUNTINGTON NATIONAL
   BANK
   Chicago Commercial Lending
   501 West North Avenue
   Melrose Park, IL 60160

WHEN RECORDED MAIL TO:
   THE HUNTINGTON NATIONAL
   BANK
   GW1W31
   PO BOX 341470
   COLUMBUS, OH 43234-1470

**FOR RECORDER'S USE ONLY**

This Mortgage prepared by:
   Megan LeMasters
   THE HUNTINGTON NATIONAL BANK
   7 Easton Oval
   Columbus, OH 43219

## MORTGAGE

**MAXIMUM LIEN. At no time shall the principal amount of indebtedness secured by the Mortgage, not including sums advanced to protect the security of the Mortgage, exceed $578,000.00.**

**THIS MORTGAGE** dated November 10, 2021, is made and executed between **Nisha M. Moeller**, a single woman, whose address is 6 East Randolph Street #2902, Chicago, IL 60601; (referred to below as "Grantor") and THE HUNTINGTON NATIONAL BANK, whose address is 501 West North Avenue, Melrose Park, IL 60160 (referred to below as "Lender").

**GRANT OF MORTGAGE.** For valuable consideration, Grantor mortgages, warrants, and conveys to Lender all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in **Cook** County, State of Illinois:

See Exhibit A, which is attached to this Mortgage and made a part of this Mortgage as if fully set forth herein.

The Real Property or its address is commonly known as **3207 West Argyle Street #2W, Chicago, IL 60625.** The Real Property tax identification number is **13-11-423-027-1016.**

**CROSS-COLLATERALIZATION.** In addition to the Guaranty, this Mortgage secures all obligations, debts and



## MORTGAGE
### (Continued)

liabilities, plus interest thereon, of either Grantor or Borrower to Lender, or any one or more of them, as well as all claims by Lender against Borrower and Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Borrower or Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

Grantor presently assigns to Lender all of Grantor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

**FUTURE ADVANCES.** In addition to the Note, this Mortgage secures all future advances made by Lender to Borrower or Grantor whether or not the advances are made pursuant to a commitment. Specifically, without limitation, this Mortgage secures, in addition to the amounts specified in the Note, all future amounts Lender in its discretion may loan to Borrower or Grantor, together with all interest thereon.

**THIS MORTGAGE, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PERFORMANCE OF A GUARANTY FROM GRANTOR TO LENDER, AND DOES NOT DIRECTLY SECURE THE OBLIGATIONS DUE LENDER UNDER THE NOTE, (B) PAYMENT OF THE INDEBTEDNESS AND (C) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THIS MORTGAGE. THIS MORTGAGE IS INTENDED TO AND SHALL BE VALID AND HAVE PRIORITY OVER ALL SUBSEQUENT LIENS AND ENCUMBRANCES, INCLUDING STATUTORY LIENS, EXCEPTING SOLELY TAXES AND ASSESSMENTS LEVIED ON THE REAL PROPERTY, TO THE EXTENT OF THE MAXIMUM AMOUNT SECURED HEREBY. THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**GRANTOR'S WAIVERS.** This Mortgage secures a guaranty and does not directly secure the Indebtedness due Lender under the Note. Grantor waives any and all rights and defenses based on suretyship or impairment of collateral including, but not limited to, any rights or defenses arising by reason of (a) any "one-action" or "anti-deficiency" law, or any other law that may prevent Lender from bringing any action or claim for deficiency against Borrower, (b) any election of remedies by Lender which may limit Grantor's rights to proceed against any party indebted under the Note, or (c) any disability or defense of any party indebted under the Note, any other guarantor or any other person by reason of cessation of the Indebtedness due under the Note for any reason other than full payment of the Note.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Mortgage is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full power, right, and authority to enter into this Mortgage and to hypothecate the Property; (c) the provisions of this Mortgage do not conflict with, or result in a default under any agreement or other instrument binding upon Grantor and do not result in a violation of any law, regulation, court decree or order applicable to Grantor; (d) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Grantor about Borrower (including without limitation the creditworthiness of Borrower).

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall strictly perform all of Grantor's obligations under the Guaranty and under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Grantor agree that Borrower's and Grantor's possession and use of the Property shall be governed by the following provisions:



## MORGAGE
### (Continued)

**Possession and Use.** Until the occurrence of an Event of Default, Grantor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

**Duty to Maintain.** Grantor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.** Grantor represents and warrants to Lender that: (1) During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor. The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.** Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.** Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property



## MORTGAGE
### (Continued)

at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.** Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Grantor agrees neither to abandon or leave unattended the Property. Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Grantor is a corporation, partnership or limited liability company, transfer also includes any restructuring of the legal entity (whether by merger, division or otherwise) or any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Grantor. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Illinois law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.** Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.** Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety



## MORGAGE
## (Continued)

bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Grantor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Lender being named as additional insureds in such liability insurance policies. Additionally, Grantor shall maintain such other insurance, including but not limited to hazard, business interruption and boiler insurance as Lender may require. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of twenty (20) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain flood insurance, if available, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan. Flood insurance may be purchased under the National Flood Insurance Program, from private insurers providing "private flood insurance" as defined by applicable federal flood insurance statutes and regulations, or from another flood insurance provider that is both acceptable to Lender in its sole discretion and permitted by applicable federal flood insurance statutes and regulations.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1000.00. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then



## MORTGAGE
### (Continued)

to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Grantor fails to comply with any provision of this Mortgage or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Mortgage or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will



**MORTGAGE**
**(Continued)**

deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the



# MORTGAGE
## (Continued)

Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

Further Assurances. At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage as first and prior liens on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

Attorney-in-Fact. If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor shall strictly perform all of Grantor's obligations under the Guaranty and Grantor otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Borrower, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Borrower), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Mortgage and this Mortgage shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Mortgage or of any note or other instrument or agreement evidencing the Indebtedness and the Property will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Mortgage.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Mortgage:

Payment Default. Borrower fails to make any payment when due under the Indebtedness.

Default on Other Payments. Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge



**MORTGAGE**
**(Continued)**

of any lien.

**Other Defaults.** Borrower or Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Mortgage or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Grantor.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their respective obligations under this Mortgage or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Grantor or on Borrower's or Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution of Grantor's (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Borrower's or Grantor's existence as a going business or the death of any member, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower's or Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Grantor under the terms of any other agreement between Borrower or Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.



## MORTGAGE
### (Continued)

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Accelerate Indebtedness.** Lender shall have the right at its option without notice to Borrower or Grantor to declare the entire Indebtedness immediately due and payable, including any prepayment penalty that Borrower would be required to pay.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Grantor, to take possession of the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Grantor irrevocably designates Lender as Grantor's attorney-in-fact to endorse instruments received in payment thereof in the name of Grantor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Judicial Foreclosure.** Lender may obtain a judicial decree foreclosing Grantor's interest in all or any part of the Property.

**Deficiency Judgment.** If permitted by applicable law, Lender may obtain a judgment for any deficiency remaining in the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this section.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Borrower and Grantor hereby waive any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender shall give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other



## MORGAGE
### (Continued)

remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Mortgage, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies. Nothing under this Mortgage or otherwise shall be construed so as to limit or restrict the rights and remedies available to Lender following an Event of Default, or in any way to limit or restrict the rights and ability of Lender to proceed directly against Grantor and/or Borrower and/or against any other co-maker, guarantor, surety or endorser and/or to proceed against any other collateral directly or indirectly securing the Indebtedness.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any party may change its address for notices under this Mortgage by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**ASSOCIATION OF UNIT OWNERS.** The following provisions apply if the Real Property has been submitted to unit ownership law or similar law for the establishment of condominiums or cooperative ownership of the Real Property:

**Power of Attorney.** Grantor grants an irrevocable power of attorney to Lender to vote in Lender's discretion on any matter that may come before the association of unit owners. Lender shall have the right to exercise this power of attorney only after Grantor's default; however, Lender may decline to exercise this power as Lender sees fit.

**Insurance.** The insurance as required above may be carried by the association of unit owners on Grantor's behalf, and the proceeds of such insurance may be paid to the association of unit owners for the purpose of repairing or reconstructing the Property. If not so used by the association, such proceeds shall be paid to Lender.

**Default.** Grantor's failure to perform any of the obligations imposed on Grantor by the declaration submitting the Real Property to unit ownership, by the bylaws of the association of unit owners, or by any



## MORTGAGE
### (Continued)

Page 12

rules or regulations thereunder, shall be an event of default under this Mortgage. If Grantor's interest in the Real Property is a leasehold interest and such property has been submitted to unit ownership, any failure by Grantor to perform any of the obligations imposed on Grantor by the lease of the Real Property from its owner, any default under such lease which might result in termination of the lease as it pertains to the Real Property, or any failure of Grantor as a member of an association of unit owners to take any reasonable action within Grantor's power to prevent a default under such lease by the association of unit owners or by any member of the association shall be an Event of Default under this Mortgage.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH REGARD TO ASSIGNMENT OF RENTS.** Grantor warrants that:

**Ownership.** Grantor is entitled to receive the Rents free and clear of all rights, loans, liens, encumbrances, and claims except as disclosed to and accepted by Lender in writing.

**Right to Assign.** Grantor has the full right, power and authority to enter into this Assignment and to assign and convey the Rents to Lender.

**No Prior Assignment.** Grantor has not previously assigned or conveyed the Rents to any other person by any instrument now in force.

**No Further Transfer.** Grantor will not sell, assign, encumber, or otherwise dispose of any of Grantor's rights in the Rents except as provided in this Mortgage.

**INTERPRETATION.** If there is more than one Grantor, each reference in this Agreement to "Grantor" shall apply to each Grantor separately as well as to all of them jointly, and the obligations, covenants, promises, warranties and representations of Grantor shall be joint and several.

**APPLICABLE LAW.** The loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: a) When SBA is the holder of the Note, this document and all documents evidencing or securing the loan will be construed in accordance with federal law. b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Grantor may claim or assert against SBA any local or state law to deny any obligation of Borrower or Grantor, or defeat any claim of SBA with respect to the loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**COUNTERPARTS.** This document may be executed by the parties hereto in any number of separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** This Mortgage, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Mortgage. No alteration of or amendment to this Mortgage shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Grantor's residence, Grantor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Grantor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall



**MORTGAGE**
**(Continued)**                                                      Page 13

mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Governing Law.** This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Illinois.

**Joint and Several Liability.** All obligations of Borrower and Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor, and all references to Borrower shall mean each and every Borrower. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Mortgage unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Mortgage shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Mortgage. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Mortgage, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Mortgage to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Mortgage. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Mortgage shall not affect the legality, validity or enforceability of any other provision of this Mortgage.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**Waive Jury.** All parties to this Mortgage hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**Waiver of Homestead Exemption.** Grantor hereby releases and waives all rights and benefits of the homestead exemption laws of the State of Illinois as to all Indebtedness secured by this Mortgage.



## MORGAGE
### (Continued)

Page 14

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Mortgage. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Mortgage shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Borrower.** The word "Borrower" means Teeny Turner, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Grantor.** The word "Grantor" means Nisha M. Moeller.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Grantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all obligations of Grantor under the Guaranty, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the obligations under the Guaranty and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means THE HUNTINGTON NATIONAL BANK, its successors and assigns.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated November 10, 2021, in the original principal amount of $578,000.00 from Borrower to Lender, together with all renewals of, extensions of,



## MORGAGE
### (Continued)

modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. **NOTICE TO GRANTOR: THE NOTE CONTAINS A VARIABLE INTEREST RATE.**

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property. However, should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Personal Property is limited to only those items specifically covered (currently or hereafter) by Coverage A of the standard flood insurance policy issued in accordance with the National Flood Insurance Program or under equivalent coverage similarly issued by a private insurer to satisfy the National Flood Insurance Act (as amended).

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND GRANTOR AGREES TO ITS TERMS.**

GRANTOR:

X _____
  Nisha M. Moeller



## MORTGAGE
### (Continued)

Page 16

---

### INDIVIDUAL ACKNOWLEDGMENT

STATE OF _____Illinois_____ )

                                                              ) SS

COUNTY OF _____Cook_____ )

On this day before me, the undersigned Notary Public, personally appeared **Nisha M. Moeller, a single woman,** to me known to be the individual described in and who executed the Mortgage, and acknowledged that he or she signed the Mortgage as his or her free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this ____10th____ day of ___November___, 20 ____.

By _Nisha M Moeller_                          Residing at _8 E Randolph st chicago IL 60601_

Notary Public in and for the State of ___Illinois___

My commission expires ___7/2/2022___

OFFICIAL SEAL
TAUSEEF S GILLANI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 07/02/2022

---

LaserPro, Ver. 21.1.0.222   Copr. Finastra USA Corporation 1997, 2021.   All Rights Reserved.   - IL
C:\LaserPro_Prod\CFI\LPL\G03.FC  TR-392146  PR-COMMSBA

OFFICIAL SEAL
TAUSEEF S GILLANI
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 07/02/2022

## EXHIBIT "A" LEGAL DESCRIPTION

Page: 1 of 1

Account #: 27701184
Order Date : 10/04/2021
Reference :
Name : NISHA MOELLER
Deed Ref : 1033441073

Index #:
Registered Land:
Parcel #: 13-11-423-027-1016

SITUATED IN THE COUNTY OF COOK, STATE OF ILLINOIS:

PARCEL 1: UNIT NUMBER 3207-2W IN THE WEST END FLATS CONDOMINIUM AS DELINEATED ON A SURVEY OF THE FOLLOWING DESCRIBED REAL ESTATE: LOTS 1 TO 5 IN THOMASSON'S 4TH RAVENSWOOD ADDITION TO CHICAGO, A SUBDIVISION OF THE EAST 1/2 OF BLOCK 21 AND 28 IN JACKSON'S SUBDIVISION OF THE SOUTHEAST 1/4 OF SECTION 11 AND THE SOUTHWEST 1/4 OF SECTION 12, TOWNSHIP 40 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, WHICH SURVEY IS ATTACHED AS EXHIBIT "B" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 0021147798 AS AMENDED FROM TIME TO TIME TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS, IN COOK COUNTY, ILLINOIS.

PARCEL 2: THE EXCLUSIVE RIGHT TO THE USE OF STORAGE SPACE 11, A LIMITED COMMON ELEMENT AS DELINEATED IN THE AFORESAID DECLARATION OF CONDOMINIUM AS LIMITED COMMON ELEMENT, S-4 RECORDED IN COOK COUNTY, ILLINOIS.

PERMANENT REAL ESTATE INDEX NUMBER(S): 13-11-423-027-1016

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN INSTRUMENT NO. 1033441073 OF THE COOK COUNTY, ILLINOIS RECORDS.
SUBJECT TO ALL EASEMENTS, COVENANTS, CONDITIONS, RESERVATIONS, LEASES AND RESTRICTIONS OF RECORD, ALL LEGAL HIGHWAYS, ALL RIGHTS OF WAY, ALL ZONING, BUILDING AND OTHER LAWS, ORDINANCES AND REGULATIONS, ALL RIGHTS OF TENANTS IN POSSESSION, AND ALL REAL ESTATE TAXES AND ASSESSMENTS NOT YET DUE AND PAYABLE

# Exhibit E



# COMMERCIAL SECURITY AGREEMENT

| Principal | Loan Date | Maturity | Loan No. | Call / Coll | Account | Officer | Initials |
|-----------|-----------|----------|----------|-------------|---------|---------|----------|
| $578,000.00 | 11-10-2021 | 11-10-2031 | | | | | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Grantor:** Teeny Turner, LLC
1100 North Wells Street, Unit 1100
Chicago, IL 60610

**Lender:** THE HUNTINGTON NATIONAL BANK
Chicago Commercial Lending
501 West North Avenue
Melrose Park, IL 60160

THIS COMMERCIAL SECURITY AGREEMENT dated November 10, 2021, is made and executed between Teeny Turner, LLC ("Grantor") and THE HUNTINGTON NATIONAL BANK ("Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**COLLATERAL DESCRIPTION.** The word "Collateral" as used in this Agreement means the following described property, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located, in which Grantor is giving to Lender a security interest for the payment of the Indebtedness and performance of all other obligations under the Note and this Agreement:

All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

**CROSS-COLLATERALIZATION.** In addition to the Note, this Agreement secures all obligations, debts and liabilities, plus interest thereon, of Grantor to Lender, or any one or more of them, as well as all claims by Lender against Grantor or any one or more of them, whether now existing or hereafter arising, whether related or unrelated to the purpose of the Note, whether voluntary or otherwise, whether due or not due, direct or indirect, determined or undetermined, absolute or contingent, liquidated or unliquidated, whether Grantor may be liable individually or jointly with others, whether obligated as guarantor, surety, accommodation party or otherwise, and whether recovery upon such amounts may be or hereafter may become barred by any statute of limitations, and whether the obligation to repay such amounts may be or hereafter may become otherwise unenforceable.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Grantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Grantor holds jointly with someone else and all accounts Grantor may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** With respect to the Collateral, Grantor represents and promises to Lender that:

**Perfection of Security Interest.** Grantor agrees to take whatever actions are requested by Lender to perfect and continue Lender's security interest in the Collateral. Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral, and Grantor will note Lender's interest upon any and all chattel paper and instruments if not delivered to Lender for possession by Lender. This is a continuing Security Agreement and will continue in effect even though all or any part of the Indebtedness is paid in full and even though for a period of time Grantor may not be indebted to Lender.

**Notices to Lender.** Grantor will promptly notify Lender in writing at Lender's address shown above (or such other addresses as Lender may designate from time to time) prior to any (1) change in Grantor's name; (2) change in Grantor's assumed business name(s); (3) change in the management or in the members or managers of the limited liability company Grantor; (4) change in the authorized signer(s); (5) change in Grantor's principal office address; (6) change in Grantor's state of organization; (7) conversion of Grantor to a new or different type of business entity; or (8) change in any other aspect of Grantor that directly or indirectly relates to any agreements between Grantor and Lender. No change in Grantor's name or state of organization will take effect until after Lender has received notice.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party, and its membership agreement does not prohibit any term or condition of this Agreement.

**Enforceability of Collateral.** To the extent the Collateral consists of accounts, chattel paper, or general intangibles, as defined by the Uniform Commercial Code, the Collateral is enforceable in accordance with its terms, is genuine, and fully complies with all applicable laws and regulations concerning form, content and manner of preparation and execution, and all persons appearing to be obligated on the Collateral have authority and capacity to contract and are in fact obligated as they appear to be on the Collateral. At the time any account becomes subject to a security interest in favor of Lender, the account shall be a good and valid account representing an undisputed, bona fide indebtedness incurred by the account debtor, for merchandise held subject to delivery instructions or previously shipped or delivered pursuant to a contract of sale, or for services previously performed by Grantor with or for the account debtor. So long as this Agreement remains in effect, Grantor shall not, without Lender's prior written consent, compromise, settle, adjust, or extend payment under or with regard to any such Accounts. There shall be no setoffs or counterclaims against any of the Collateral, and no agreement shall have been made under which any deductions or discounts may be claimed concerning the Collateral except those disclosed to Lender in writing.

**Location of the Collateral.** Except in the ordinary course of Grantor's business, Grantor agrees to keep the Collateral (or to the extent the Collateral consists of intangible property such as accounts or general intangibles, the records concerning the Collateral) at Grantor's address shown above, or at the location specified in the Collateral definition in this Agreement, or at such other locations as are acceptable to Lender. Upon Lender's request, Grantor will deliver to Lender in form satisfactory to Lender a schedule of real properties and Collateral locations relating to Grantor's operations, including without limitation the following: (1) all real property Grantor owns or is purchasing; (2) all real property Grantor is renting or leasing; (3) all storage facilities Grantor owns, rents, leases, or uses; and (4) all other properties where Collateral is or may be located.



**COMMERCIAL SECURITY AGREEMENT**
**(Continued)** Page 2

---

**Removal of the Collateral.** Except in the ordinary course of Grantor's business, including the sales of inventory, Grantor shall not remove the Collateral from its existing location without Lender's prior written consent. To the extent that the Collateral consists of vehicles, or other titled property, Grantor shall not take or permit any action which would require application for certificates of title for the vehicles outside the State of Illinois, without Lender's prior written consent. Grantor shall, whenever requested, advise Lender of the exact location of the Collateral.

**Transactions Involving Collateral.** Except for inventory sold or accounts collected in the ordinary course of Grantor's business, or as otherwise provided for in this Agreement, Grantor shall not sell, offer to sell, or otherwise transfer or dispose of the Collateral. While Grantor is not in default under this Agreement, Grantor may sell inventory, but only in the ordinary course of its business and only to buyers who qualify as a buyer in the ordinary course of business. A sale in the ordinary course of Grantor's business does not include a transfer in partial or total satisfaction of a debt or any bulk sale. Grantor shall not pledge, mortgage, encumber or otherwise permit the Collateral to be subject to any lien, security interest, encumbrance, or charge, other than the security interest provided for in this Agreement, without the prior written consent of Lender. This includes security interests even if junior in right to the security interests granted under this Agreement. Unless waived by Lender, all proceeds from any disposition of the Collateral (for whatever reason) shall be held in trust for Lender and shall not be commingled with any other funds; provided however, this requirement shall not constitute consent by Lender to any sale or other disposition. Upon receipt, Grantor shall immediately deliver any such proceeds to Lender.

**Title.** Grantor represents and warrants to Lender that Grantor holds good and marketable title to the Collateral, free and clear of all liens and encumbrances except for the lien of this Agreement. No financing statement covering any of the Collateral is on file in any public office other than those which reflect the security interest created by this Agreement or to which Lender has specifically consented. Grantor shall defend Lender's rights in the Collateral against the claims and demands of all other persons.

**Repairs and Maintenance.** Grantor agrees to keep and maintain, and to cause others to keep and maintain, the Collateral in good order, repair and condition at all times while this Agreement remains in effect. Grantor further agrees to pay when due all claims for work done on, or services rendered or material furnished in connection with the Collateral so that no lien or encumbrance may ever attach to or be filed against the Collateral.

**Inspection of Collateral.** Lender and Lender's designated representatives and agents shall have the right at all reasonable times to examine and inspect the Collateral wherever located.

**Taxes, Assessments and Liens.** Grantor will pay when due all taxes, assessments and liens upon the Collateral, its use or operation, upon this Agreement, upon any promissory note or notes evidencing the Indebtedness, or upon any of the other Related Documents. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized in Lender's sole opinion. If the Collateral is subjected to a lien which is not discharged within fifteen (15) days, Grantor shall deposit with Lender cash, a sufficient corporate surety bond or other security satisfactory to Lender in an amount adequate to provide for the discharge of the lien plus any interest, costs, attorneys' fees or other charges that could accrue as a result of foreclosure or sale of the Collateral. In any contest Grantor shall defend itself and Lender and shall satisfy any final adverse judgment before enforcement against the Collateral. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings. Grantor further agrees to furnish Lender with evidence that such taxes, assessments, and governmental and other charges have been paid in full and in a timely manner. Grantor may withhold any such payment or may elect to contest any lien if Grantor is in good faith conducting an appropriate proceeding to contest the obligation to pay and so long as Lender's interest in the Collateral is not jeopardized.

**Compliance with Governmental Requirements.** Grantor shall comply promptly with all laws, ordinances, rules and regulations of all governmental authorities, now or hereafter in effect, applicable to the ownership, production, disposition, or use of the Collateral, including all laws or regulations relating to the undue erosion of highly-erodible land or relating to the conversion of wetlands for the production of an agricultural product or commodity. Grantor may contest in good faith any such law, ordinance or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Lender's interest in the Collateral, in Lender's opinion, is not jeopardized.

**Hazardous Substances.** Grantor represents and warrants that the Collateral never has been, and never will be so long as this Agreement remains a lien on the Collateral, used in violation of any Environmental Laws or for the generation, manufacture, storage, transportation, treatment, disposal, release or threatened release of any Hazardous Substance. The representations and warranties contained herein are based on Grantor's due diligence in investigating the Collateral for Hazardous Substances. Grantor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any Environmental Laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims and losses resulting from a breach of this provision of this Agreement. This obligation to indemnify and defend shall survive the payment of the Indebtedness and the satisfaction of this Agreement.

**Maintenance of Casualty Insurance.** Grantor shall procure and maintain all risks insurance, including without limitation fire, theft and liability coverage together with such other insurance as Lender may require with respect to the Collateral, in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Grantor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least twenty (20) days' prior written notice to Lender and not including any disclaimer of the insurer's liability for failure to give such a notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest, Grantor will provide Lender with such loss payable or other endorsements as Lender may require. If Grantor at any time fails to obtain or maintain any insurance as required under this Agreement, Lender may (but shall not be obligated to) obtain such insurance as Lender deems appropriate, including if Lender so chooses "single interest insurance," which will cover only Lender's interest in the Collateral.

**Application of Insurance Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Collateral, whether or not such casualty or loss is covered by insurance. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. All proceeds of any insurance on the Collateral, including accrued proceeds thereon, shall be held by Lender as part of the Collateral. If Lender consents to repair or replacement of the damaged or destroyed Collateral, Lender shall, upon satisfactory proof of expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration. If Lender does not consent to repair or replacement of the Collateral, Lender shall retain a sufficient amount of the proceeds to pay all of the Indebtedness, and shall pay the balance to Grantor. Any proceeds which have not been disbursed within six (6) months after their receipt and which Grantor has not committed to the repair or restoration of the Collateral shall be used to prepay the Indebtedness.

**Insurance Reserves.** Lender may require Grantor to maintain with Lender reserves for payment of insurance premiums, which reserves shall be created by monthly payments from Grantor of a sum estimated by Lender to be sufficient to produce, at least fifteen (15) days before the premium due date, amounts at least equal to the insurance premiums to be paid. If fifteen (15) days before payment is due, the reserve funds are insufficient, Grantor shall upon demand pay any deficiency to Lender. The reserve funds shall be held by Lender as a general deposit and shall constitute a non-interest-bearing account which Lender may satisfy by payment of the insurance premiums required to be paid by Grantor as they become due. Lender does not hold the reserve funds in trust for Grantor, and Lender is not the agent of Grantor for payment of the insurance premiums required to be paid by Grantor. The responsibility for the payment of premiums shall remain Grantor's sole responsibility.

**Insurance Reports.** Grantor, upon request of Lender, shall furnish to Lender reports on each existing policy of insurance showing such information as Lender may reasonably request including the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured; (5) the then current value on the basis of which insurance has been obtained and the manner of determining that value; and (6) the expiration date of the policy. In addition, Grantor shall upon request by Lender (however not more often than annually) have an independent appraiser satisfactory to Lender determine, as applicable, the cash value or replacement cost of the Collateral.

**Financing Statements.** Grantor authorizes Lender to file a UCC financing statement, or alternatively, a copy of this Agreement to perfect Lender's security interest. At Lender's request, Grantor additionally agrees to sign all other documents that are necessary to perfect, protect, and continue Lender's security interest in the Property. This includes making sure Lender is shown as the first and only security interest holder on the title covering the Property. Grantor will pay all filing fees, title transfer fees, and other fees and costs involved unless prohibited by law or unless Lender is required by law to pay such fees and costs. Grantor irrevocably appoints Lender to execute documents necessary to transfer title if there is a default. Lender may file a copy of this Agreement as a financing statement. Grantor will



## COMMERCIAL SECURITY AGREEMENT
### (Continued)

promptly notify Lender of any change to Grantor's name or the name of any individual Grantor, any individual who is a partner for a Grantor, and any individual who is a trustee or settlor or trustor for a Grantor under this Agreement. Grantor will also promptly notify Lender of any change to the name that appears on the most recently issued, unexpired driver's license or state-issued identification card, any expiration of the most recently issued driver's license or state-issued identification card for Grantor or any individual for whom Grantor is required to provide notice regarding name changes.

**GRANTOR'S RIGHT TO POSSESSION AND TO COLLECT ACCOUNTS.** Until default and except as otherwise provided below with respect to accounts, Grantor may have possession of the tangible personal property and beneficial use of all the Collateral and may use it in any lawful manner not inconsistent with this Agreement or the Related Documents, provided that Grantor's right to possession and beneficial use shall not apply to any Collateral where possession of the Collateral by Lender is required by law to perfect Lender's security interest in such Collateral. Until otherwise notified by Lender, Grantor may collect any of the Collateral consisting of accounts. At any time and even though no Event of Default exists, Lender may exercise its rights to collect the accounts and to notify account debtors to make payments directly to Lender for application to the Indebtedness. If Lender at any time has possession of any Collateral, whether before or after an Event of Default, Lender shall be deemed to have exercised reasonable care in the custody and preservation of the Collateral if Lender takes such action for that purpose as Grantor shall request or as Lender, in Lender's sole discretion, shall deem appropriate under the circumstances, but failure to honor any request by Grantor shall not of itself be deemed to be a failure to exercise reasonable care. Lender shall not be required to take any steps necessary to preserve any rights in the Collateral against prior parties, nor to protect, preserve or maintain any security interest given to secure the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Grantor fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Grantor's failure to discharge or pay when due any amounts Grantor is required to discharge or pay under this Agreement or any Related Documents, Lender on Grantor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Collateral and paying all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of any Event of Default.

**REINSTATEMENT OF SECURITY INTEREST.** If payment is made by Grantor, whether voluntarily or otherwise, or by guarantor or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment (A) to Grantor's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, (B) by reason of any judgment, decree or order of any court or administrative body having jurisdiction over Lender or any of Lender's property, or (C) by reason of any settlement or compromise of any claim made by Lender with any claimant (including without limitation Grantor), the Indebtedness shall be considered unpaid for the purpose of enforcement of this Agreement and this Agreement shall continue to be effective or shall be reinstated, as the case may be, notwithstanding any cancellation of this Agreement or of any note or other instrument or agreement evidencing the Indebtedness and the Collateral will continue to secure the amount repaid or recovered to the same extent as if that amount never had been originally received by Lender, and Grantor shall be bound by any judgment, decree, order, settlement or compromise relating to the Indebtedness or to this Agreement.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Other Defaults.** Grantor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Grantor.

**Default in Favor of Third Parties.** Any guarantor or Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of any guarantor's or Grantor's property or ability to perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Insolvency.** The dissolution of Grantor (regardless of whether election to continue is made), any member withdraws from the limited liability company, or any other termination of Grantor's existence as a going business or the death of any member, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Grantor or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Grantor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Grantor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Grantor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or Guarantor dies or becomes incompetent or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Grantor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender shall have all the rights of a secured party under the Illinois Uniform Commercial Code. In addition and without limitation, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Lender may declare the entire Indebtedness, including any prepayment penalty which Grantor would be required to pay, immediately due and payable, without notice of any kind to Grantor.

**Assemble Collateral.** Lender may require Grantor to deliver to Lender all or any portion of the Collateral and any and all certificates of title and other documents relating to the Collateral. Lender may require Grantor to assemble the Collateral and make it available to Lender at a place to be designated by Lender. Lender also shall have full power to enter upon the property of Grantor to take possession of and remove the Collateral. If the Collateral contains other goods not covered by this Agreement at the time of repossession, Grantor agrees Lender may take such other goods, provided that Lender makes reasonable efforts to return them to Grantor after repossession.

**Sell the Collateral.** Lender shall have full power to sell, lease, transfer, or otherwise deal with the Collateral or proceeds thereof in Lender's own name or that of Grantor. Lender may sell the Collateral at public auction or private sale. Unless the Collateral threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender will give Grantor, and other persons as required by law, reasonable notice of the time and place of any public sale, or the time after which any private sale or any other disposition of the Collateral is to be made. However, no notice need be provided to any person who, after Event of Default occurs, enters into and authenticates an agreement waiving that person's right to notification of sale. The requirements of reasonable notice shall be met if such notice is given at least ten (10) days before the time of the sale or disposition. All expenses relating to the disposition of the Collateral, including without limitation the expenses of retaking, holding, insuring, preparing for sale and selling the Collateral, shall become a part of the Indebtedness secured by this Agreement and shall be payable on demand, with interest at the Note rate from date of expenditure until repaid.



## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 4

**Mortgagee in Possession.** Lender shall have the right to be placed as mortgagee in possession or to have a receiver appointed to take possession of all or any part of the Collateral, with the power to protect and preserve the Collateral, to operate the Collateral preceding foreclosure or sale, and to collect the Rents from the Collateral and apply the proceeds, over and above the cost of the receivership, against the Indebtedness. The mortgagee in possession or receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Collateral exceeds the Indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

**Collect Revenues, Apply Accounts.** Lender, either itself or through a receiver, may collect the payments, rents, income, and revenues from the Collateral. Lender may at any time in Lender's discretion transfer any Collateral into Lender's own name or that of Lender's nominee and receive the payments, rents, income, and revenues therefrom and hold the same as security for the Indebtedness or apply it to payment of the Indebtedness in such order of preference as Lender may determine. Insofar as the Collateral consists of accounts, general intangibles, insurance policies, instruments, chattel paper, choses in action, or similar property, Lender may demand, collect, receipt for, settle, compromise, adjust, sue for, foreclose, or realize on the Collateral as Lender may determine, whether or not Indebtedness or Collateral is then due. For these purposes, Lender may, on behalf of and in the name of Grantor, receive, open and dispose of mail addressed to Grantor; change any address to which mail and payments are to be sent; and endorse notes, checks, drafts, money orders, documents of title, instruments and items pertaining to payment, shipment, or storage of any Collateral. To facilitate collection, Lender may notify account debtors and obligors on any Collateral to make payments directly to Lender.

**Obtain Deficiency.** If Lender chooses to sell any or all of the Collateral, Lender may obtain a judgment against Grantor for any deficiency remaining on the Indebtedness due to Lender after application of all amounts received from the exercise of the rights provided in this Agreement. Grantor shall be liable for a deficiency even if the transaction described in this subsection is a sale of accounts or chattel paper.

**Other Rights and Remedies.** Lender shall have all the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, as may be amended from time to time. In addition, Lender shall have and may exercise any or all other rights and remedies it may have available at law, in equity, or otherwise.

**Election of Remedies.** Except as may be prohibited by applicable law, all of Lender's rights and remedies, whether evidenced by this Agreement, the Related Documents, or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**INTERPRETATION.** If there is more than one Grantor, each reference in this Agreement to "Grantor" shall apply to each Grantor separately as well as to all of them jointly, and the obligations, covenants, promises, warranties and representations of Grantor shall be joint and several.

**APPLICABLE LAW.** The loan secured by this lien was made under a United States Small Business Administration (SBA) nationwide program which uses tax dollars to assist small business owners. If the United States is seeking to enforce this document, then under SBA regulations: a) When SBA is the holder of the Note, this document and all documents evidencing or securing the loan will be construed in accordance with federal law. b) Lender or SBA may use local or state procedures for purposes such as filing papers, recording documents, giving notice, foreclosing liens, and other purposes. By using these procedures, SBA does not waive any federal immunity from local or state control, penalty, tax or liability. No Borrower or Grantor may claim or assert against SBA any local or state law to deny any obligation of Borrower or Grantor, or defeat any claim of SBA with respect to the loan. Any clause in this document requiring arbitration is not enforceable when SBA is the holder of the Note secured by this instrument.

**COUNTERPARTS.** This document may be executed by the parties hereto in any number of separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Governing Law.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Illinois without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Illinois.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors.

**Power of Attorney.** Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect, amend, or to continue the security interest granted in this Agreement or to demand termination of filings of other secured parties. Lender may at any time, and without further authorization from Grantor, file a carbon, photographic or other reproduction of any financing statement or of this Agreement for use as a financing statement. Grantor will reimburse Lender for all expenses for the perfection and the continuation of the perfection of Lender's security interest in the Collateral.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Successors and Assigns.** Subject to any limitations stated in this Agreement on transfer of Grantor's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Agreement or liability under the Indebtedness.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Grantor in this Agreement shall



## COMMERCIAL SECURITY AGREEMENT
### (Continued)

Page 5

survive the execution and delivery of this Agreement, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury.** All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Agreement.** The word "Agreement" means this Commercial Security Agreement, as this Commercial Security Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Security Agreement from time to time.

**Borrower.** The word "Borrower" means Teeny Turner, LLC and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all of Grantor's right, title and interest in and to all the Collateral as described in the Collateral Description section of this Agreement.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**Grantor.** The word "Grantor" means Teeny Turner, LLC.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Indebtedness.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Grantor is responsible under this Agreement or under any of the Related Documents. Specifically, without limitation, Indebtedness includes all amounts that may be indirectly secured by the Cross-Collateralization provision of this Agreement.

**Lender.** The word "Lender" means THE HUNTINGTON NATIONAL BANK, its successors and assigns.

**Note.** The word "Note" means the Note dated November 10, 2021 and executed by Teeny Turner, LLC in the principal amount of $578,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Property.** The word "Property" means all of Grantor's right, title and interest in and to all the Property as described in the "Collateral Description" section of this Agreement.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

**GRANTOR HAS READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS COMMERCIAL SECURITY AGREEMENT AND AGREES TO ITS TERMS. THIS AGREEMENT IS DATED NOVEMBER 10, 2021.**

**GRANTOR:**

**TEENY TURNER, LLC**

By: _____
    Nisha M. Moeller, Member of Teeny Turner, LLC

Exhibit F

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS

RECEIVED

IL SECRETARY OF STATE

UNIFORM COMMERCIAL CODE

20211116   0900

$20.00   Electronic

**27887961**                    FS

**A. NAME & PHONE OF CONTACT AT FILER (optional)**
Lien Solutions                    800-331-3282

**B. E-MAIL CONTACT AT FILER (optional)**
uccfilingreturn@wolterskluwer.com

**C. SEND ACKNOWLEDGMENT TO:   (Name and Address)**

LIEN SOLUTIONS
P.O. Box 29071
Glendale, CA  91209-9071
USA

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S NAME:** Provide only **one** Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| TEENY TURNER, LLC | | | |
| **OR** 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 1100 NORTH WELLS ST, UNIT 1100 | CHICAGO | IL | 60610 | USA |

**2. DEBTOR'S NAME:** Provide only **one** Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Individual Debtor's name; if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor Information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |
| **OR** 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**3. SECURED PARTY'S NAME** (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only **one** Secured Party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| THE HUNTINGTON NATIONAL BANK | | | |
| **OR** 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 5555 CLEVELAND AVE - GW1W37 | COLUMBUS | OH | 43231 | USA |

**4. COLLATERAL:** This financing statement covers the following collateral:
All inventory, equipment, accounts (including but not limited to all health-care-insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures; all timber to be cut; all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property; all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media; and all supporting obligations relating to the foregoing property; all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance

**5.** Check **only** if applicable and check **only** one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

**6a.** Check **only** if applicable and check **only** one box:
☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

**6b.** Check **only** if applicable and check **only** one box:
☐ Agricultural Lien ☐ Non-UCC Filing

**7. ALTERNATIVE DESIGNATION (if applicable):** ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

**8. OPTIONAL FILER REFERENCE DATA:**
IL-0-83465394-62590218

FILING OFFICE COPY — UCC FINANCING STATEMENT (Form UCC1) (Rev. 04/20/11)

## UCC FINANCING STATEMENT **ADDENDUM**

FOLLOW INSTRUCTIONS

| | |
|---|---|
| 9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐ | 27887961      FS |

9a. ORGANIZATION'S NAME

TEENY TURNER, LLC

OR

9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S)      SUFFIX

**THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY**

10. DEBTOR'S NAME: Provide (10a or 10b) only <u>one</u> additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR

10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S)      SUFFIX

| 10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

11. ☐ ADDITIONAL SECURED PARTY'S NAME  <u>or</u>  ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only <u>one</u> name (11a or 11b)

11a. ORGANIZATION'S NAME

OR

| 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
|---|---|---|---|
| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):
payments) of or relating to the foregoing property.

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS  (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut    ☐ covers as-extracted collateral    ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:

FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (Form UCC1Ad) (Rev. 04/20/11)